UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

IN RE:
THOMAS J. LANE AND                              Chapter 13
PAULINE LANE,                                   Case No. 08-10840-WH
         DEBTORS

**MEMORANDUM OF DECISION**

**I. INTRODUCTION**

The matters before the Court are the Objection to Confirmation of Chapter 13 Plan filed by eCAST Settlement Corporation ("eCAST"), as assignee of FIA Card Services a/k/a Bank of America and GE Money Bank/Lowe's Consumer (the "Objection"), and the Response filed by Thomas J. and Pauline Lane (the "Debtors"). eCAST objects to the Debtors' plan asserting, *inter alia*, that the Debtors have understated their projected disposable income by misstating their current monthly income and by claiming an expense deduction on Form 22C for a vehicle which is owned outright. For the reasons set forth below, I will enter an order overruling the Objection.

**II. BACKGROUND**

The Debtors filed a voluntary Chapter 13 petition with all schedules and a Chapter 13 plan (the "Plan") on February 6, 2008. On March 31, 2008, the Debtors filed an Amended Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form 22C"). On line 20 of Form 22C, the Debtors reported current monthly income of $12,757.75. Schedule I - Current Income of Individual Debtors ("Schedule I"), however, reflected that the Debtors have a monthly income of $14,380.45. Line 21 of Form 22C reflects that the

Debtors' annualized current monthly income is $153,093. Because this amount exceeds the applicable median family income for debtors in this state, specifically $77,960, the Debtors are above median income debtors with an applicable commitment period of five years pursuant to 11 U.S.C. § 1325(b)(4). As above median income debtors, they were then required to calculate their "disposable income" with reference to the deductions allowed under 11 U.S.C. § 707(b)(2) using National and Local Standards of the Internal Revenue Service (the "Local Standards"). The following table summarizes the deductions claimed on Form 22C.

| Form 22C | Expense Deduction | Line |
|---|---|---|
| $2,378.00 | Secured Payment for Residence - WaMu | Line 47(a) |
| $463.14 | Secured Payment for Residence - Ditech | Line 47(b) |
| $0.00 | Net Mortgage/Rent Expense | Line 25B |
| $522.00 | Housing and Utilities; Non-Mortgage Expenses | Line 25A |
| $141.00 | Other Necessary Expenses ("ONE"): Telecommunications Services | Line 37 |
| $1,123.00 | Food, Apparel, Housekeeping Supplies, Personal Care, and Misc. | Line 24A |
| $162.00 | Out-of-Pocket Health Care | Line 24B |
| $371.67 | ONE: Health Care | Line 36 |
| $418.00 | Vehicle Operation/Public Transportation Expense | Line 27A |
| $0.00 | Charitable Contributions | Line 45 |
| $178.15 | Secured Payment for Vehicle 1 | Line 47 |
| $137.50 | Education Expenses for Dependent Children Under 18 | Line 43 |
| $299.85 | Transportation Ownership Expense - Vehicle 1 | Line 28 |
| $478.00 | Transportation Ownership Expense - Vehicle 2 | Line 29 |
| $0.00 | Additional Expense Claims | Line 60 |
| $3,152.66 | ONE: Taxes | Line 30 |
| $252.03 | Health Insurance | Line 39 |
| $624.26 | Involuntary Deductions for Employment | Line 32 |
| $143.01 | Chapter 13 Administrative Expense | Line 50 |
| $416.62 | Qualified Retirement Deduction | Line 55 |
| $91.93 | Secured Payment for 401(k) | Line 47(c) |
| $117.85 | Personal Life Insurance | Line 32 |
| $11,470.67 | Total Adjustments to Determine Disposable Income | Line 58 |

On Form 22C, the Debtors claimed an "ownership expense" for two vehicles. On Schedule B - Personal Property ("Schedule B"), the Debtors disclosed ownership interests in a 1999 Volkswagon Cabrio GL Convertible (the "Cabrio") and a 2003 Ford F-150 Super Cab (the "F-150"). Schedule D - Creditors Holding Secured Claims ("Schedule D"), reveals that there is a lien against

2

the F-150 and that the Cabrio is not subject to liens. On line 28(a) of Form 22C, the Debtors claimed an expense of $478 under the "IRS Transportation Standards, Ownership Costs" (the "IRS Transportation Standards") reduced on line 28(b) by their average monthly payment of $178.15 for a debt secured by "Vehicle 1," in this case the F-150, for a net ownership expense of $299.85 on line 28(c). On line 29, they again claimed an expense under the IRS Transportation Standards in the amount of $478 for "Vehicle 2," presumably for the Cabrio. Consistent with Schedule D, this expense is not reduced by any secured debt payment on the vehicle.

The total of all adjustments to determine disposable income claimed by the Debtors, as listed on line 58 of Form 22C, is $11,470.67. When this amount is subtracted from the Debtors' current monthly income of $12,757.75, it yields monthly disposable income of $1,287.08. In contrast to the amount of monthly disposable income as calculated under 11 U.S.C. § 1325(b)(3) on Form 22C, Schedule J indicates that the Debtors have actual monthly net income of $1,456.86.

A closer review of the Debtors' Schedules, however, reveals a mathematical error on Schedule I. As indicated below, the Debtors miscalculated the subtotal of Mr. Lane's payroll deductions, and thus overstated their "combined average monthly income."

|  |  | DEBTOR | As Corrected | SPOUSE |
|---|---|---|---|---|
| INCOME |  |  |  |  |
| 1. Current monthly gross wages, salary, and commissions |  | $8,416.68 |  | $5,963.77 |
| 2. Estimated monthly overtime |  |  |  | $381.90 |
| 3. SUBTOTAL |  | $8,416.68 |  | $6,345.67 |
| 4. LESS PAYROLL DEDUCTIONS |  |  |  |  |
| a. Payroll taxes and Social Security |  | $2,206.02 |  | $1,467.07 |
| b. Insurance |  | $392.54 |  | $73.41 |
| c. Union dues |  |  |  |  |
| d. Other (specify) | 401(k) Loan | $893.97 |  |  |
|  | 401(k) | $525.01 |  |  |
| 5. SUBTOTAL OF PAYROLL DEDUCTIONS |  | $3,748.01 | $4,017.54 | $1,540.48 |
| 6. TOTAL NET MONTHLY TAKE HOME PAY |  | $4,668.67 | $4,399.14 | $4,805.19 |
|  | *** |  |  |  |
| 15. AVERAGE MONTHLY INCOME |  | $4,668.67 | $4,399.14 | $4,805.19 |
| 16. COMBINED AVERAGE MONTHLY INCOME |  | $9,473.86 | $9,204.33 |  |

3

Because the Debtors' combined average monthly income as determined by Schedule I is used to calculate the Debtors "monthly net income," the error was carried over to Schedule J. This error is illustrated below.

|  | As Filed | As Corrected |
|---|---|---|
| Schedule I Combined Average Monthly Income | $9,473.86 | $9,204.33 |
| Schedule J Average Monthly Expenses | $8,017.00 | $8,017.00 |
| Monthly Net Income | $1,456.86 | $1,187.33 |

Accordingly, the Debtors stated their monthly net income as $1,456.86, rather than the correct amount of $1,187.33.

This mathematical error also impacts the monthly disposable income calculation on Form 22C. On line 50(a) of Form 22C, the Debtors are instructed to input their "projected average monthly Chapter 13 plan payment." This number is the monthly net income figure generated by Schedule J. It is then multiplied by the "current multiplier" based on the district in which the Debtors reside, in this case 10%, to determine the expense deduction to which the Debtors are entitled as an average monthly administrative expense of the Chapter 13 case. Here, the Debtors claimed a Chapter 13 administrative expense deduction of $143.01 on line 50, rather than $118.73, which is ten percent of the $1,187.33 properly reflected on Schedule J.[1] Correcting this error further results in a reduction of the total adjustments to determine disposable income, yielding $11,446.39 on line 58. Accordingly, the Debtors' monthly disposable income as properly calculated increases to $1,311.36.[2]

---

[1] Oddly, the Debtors listed $1,430.09 as their projected monthly Chapter 13 plan payment, and not the $1,456.86 that they calculated on Schedule J and subsequently used as their proposed plan payment.

[2] $6,679.48 (Mr. Lane's Gross Monthly Income) + $6,078.27 (Mr. Lane's Gross Monthly Income) = $12,757.75 (Current Monthly Income) - $11,446.39 (Total Adjustments) = $1,311.36

4

The Debtors' Chapter 13 Plan (the "Plan"), filed contemporaneously with Form 22C, provides for monthly payments of $1,456.86 over a term of sixty months. This plan payment is consistent with the monthly net income figure incorrectly calculated by the Debtors in Schedule J. Through the Plan, they do not provide for payment of any secured, priority claims, or administrative claims.[3] The Debtors propose to pay the holders of general unsecured claims a dividend of not less than 47.21%, totaling $78,670.20 over sixty months.

On April 2, 2008, eCAST, the alleged holder of over 40% of the Debtors' total unsecured debt, filed the Objection on the grounds that the Debtors fail to devote all of their projected disposable income received during the commitment period to the unsecured creditors, and that the amount of property to be received under the Plan is less than the amount of its claim. eCAST's objection asserts, *inter alia*, that the Debtors' income component of the monthly disposable income calculation fails to include reasonably anticipated income. Moreover, eCAST argues that the Debtors' projected disposable income is understated due to the Debtors' claiming of a "phantom" expense deduction related to the Cabrio. On April 24, 2008, the Debtors filed a response in which they assert that there had been no change in circumstances and that the difference in gross income reflected on Schedule J and Form 22C was the result of a software anomaly. They further argue that while there is a split of authority on the subject, many courts have allowed debtors to claim expense deductions on vehicles owned outright.

I conducted a hearing on the Objection on May 15, 2008. At that time, counsel for eCAST represented that the issue with respect to the Debtors' income had been resolved and that eCAST

---

(Monthly Disposable Income).

[3] The Plan indicates that the secured claims of Washington Mutual, Ditech Home Financing, and Bridgewater Credit Union will be paid outside of the plan.

5

would not be pursuing that part of the Objection.[4]  No party requested a further evidentiary hearing. At the conclusion of oral arguments, I took the matter under advisement. eCAST subsequently filed a brief in support of the Objection.  This brief also addressed the income objection eCAST had waived at the hearing.  Two days later, the Chapter 13 trustee (the "Trustee") filed a brief in response.  While the Debtors did not to file a brief in opposition of the Objection, on July 15, 2008, I ordered the Debtors to file supplemental statement clarifying their response with respect to the income disparity reported on Schedule I and Form 22C.  The Debtors filed this statement on July 23, 2008, with two months of pre-petition pay advices attached.  These pay advices indicate that Mrs. Lane is paid an hourly wage, with hours and overtime fluctuating during each pay period.

### III. POSITIONS OF THE PARTIES

eCAST

Relying on *Kibbe v. Sumski*,[5] eCAST argues that projected disposable income should be calculated by using current monthly income unless that figure does not properly reflect reasonably anticipated income.  For example, if Schedule I evidences that current monthly income does not reflect reasonably anticipated income, the income component of the projected disposable income calculation should be adjusted.  Accordingly, eCAST contends that the income component of the projected disposable income calculation should be $14,762.35, the Debtors' gross income as reported on Schedule I.  In its brief, however, eCAST concedes that if the Debtors are able to show that the current monthly income figure is the same as the Schedule I figure, then it would be appropriate for the Debtors to use $12,757.75 in the projected disposable income calculation.

---

[4] Trans. May 15, 2008 at 2, ¶ 12-19.

[5] *Kibbe v. Sumski (In re Kibbe)*, 361 B.R. 302, 314 (B.A.P. 1st Cir. 2007).

On the expense side of the calculation, eCAST asserts that the Debtors are not entitled to the $478 expense deduction related to the Cabrio. While acknowledging that there is a split of authority on the subject, eCAST asserts that appellate courts have uniformly rejected the position that debtors should be entitled to an ownership deduction where they have no ownership costs.[6] First, eCAST argues that the Local Standards are not "applicable," as required by the plain language of 11 U.S.C. § 707(b)(2)(A)(ii)(I), where the Debtors have no vehicle payment. Relying on *Grossman v. Sawdy*, eCAST contends that the word "applicable" in 11 U.S.C. § 707(b)(2)(A)(ii)(I) modifies "monthly expenses," such that debtors without a car payment have no "applicable" expense.[7] Citing to *Babin v. Wilson*,[8] it asserts that applying the Local Standard to only those to whom it is "applicable" takes into consideration the "plain meaning" of the term as well as the purpose behind the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), namely, to ensure that debtors pay as much as they can afford. To illustrate, eCAST cites *In re Deadmond*,[9] a case concluding that allowing the debtor to deduct "phantom payments" on non-operational cars defied common sense as it would allow the debtor to shelter vast amounts of income. eCAST further argues that cases drawing a distinction between "applicable" and "actual" in 11 U.S.C. § 707(b)(2)

---

[6] *Babin v. Wilson (In re Wilson)*, 383 B.R. 729 (B.A.P. 8th Cir. 2008); *Ransom v. MBNA America Bank, N.A. (In re Ransom)*, 380 B.R. 799 (B.A.P. 9th Cir. 2007); *Grossman v. Sawdy*, 384 B.R. 199 (E.D. Wis. 2008); *United States Trustee v. Deadmond (In re Deadmond)*, No. CV 07-15-H-CCL, 2008 WL 191165 (D. Mont. Jan. 22, 2008); *Meade v. McVay (In re Meade)*, 384 B.R. 132 (W.D. Tex. 2008); *Wieland v. Thomas*, 382 B.R. 793 (D. Kan. 2008); *Fokkena v. Hartwick (In re Hartwick)*, 373 B.R. 645 (D. Minn. 2007); *Neary v. Ross-Tousey (In re Ross-Tousey)*, 368 B.R. 762 (E.D. Wis. 2007).

[7] *Grossman v. Sawdy*, 384 B.R. at 203.

[8] *Babin v. Wilson*, 383 B.R. at 729.

[9] *In re Deadmond*, 2008 WL 191165 at *4.

7

do so with no basis and attach too little meaning to "applicable." It contends that if "applicable" simply meant choosing the right number from the Local Standards, it would be redundant because there is no other way to use the Local Standards.

Second, if I do not accept the meaning of "applicable" in section 707(b)(2)(A)(A)(ii)(I) as plain, eCAST urges me to adopt the IRS guidelines, namely, the Financial Analysis Handbook of the Internal Revenue Manual (the "IRM"), to interpret the Local Standards. eCAST asserts that reference to the guidelines the IRS uses in applying its own standards clearly requires debtors actually have a car payment to use the Standard as IRM 5.15.1.7 provides that "[t]axpayers will normally be allowed the local standard or the amount actually paid, whichever is less." eCAST notes that numerous courts have looked to the IRM as the definitive guide to using the Local Standards.[10] Relying on *In re Slusher*, eCAST argues that by incorporating the Local Standards into the language of 11 U.S.C. § 707(b)(2)(A)(ii)(I), Congress evidenced its intent for the Local Standards to be applied in a manner consistent with the IRM.[11]

Third, eCAST asserts that Chapter 13 debtors' expenses are still subject to the threshold requirement of reasonable necessity and that BAPCPA did not eliminate an independent determination of reasonable necessity. As such, it contends that an expense that is not incurred is not reasonably necessary. Relying on *In re McGillis*[12] and *In re Devilliers*,[13] eCAST argues that 11

---

[10] *See, e.g.*, *Grossman v. Sawdy*, 384 B.R. at 203; *In re Talmadge*, 371 B.R. 96 (Bankr. M.D. Pa. 2007); *In re Slusher*, 359 B.R. 290 (Bankr. D. Nev. 2007); *In re Devilliers*, 358 B.R. 849 (Bankr. E.D. La. 2007); *In re Lenton*, 358 B.R. 651 (Bankr. E.D. Pa. 2006).

[11] *In re Slusher*, 359 B.R. at 309.

[12] *In re McGillis*, 370 B.R. 720 (Bankr. W.D. Mich. 2007).

[13] *In re Devilliers*, 358 B.R. at 859.

8

U.S.C. § 1325(b)(3) should be interpreted as offering a further guideline to ensure the expenses claimed by above median income debtors are reasonably necessary.

In sum, eCAST asserts that the Debtors' income should be reduced by monthly means test expense deductions totaling $10,992.67, $478 less than the figure used by the Debtors. This will yield monthly disposable income of either $1,765.08 or $3,769.68, depending on whether the Schedule I or Form 22C gross income figure is used, respectively. In any event, because the Debtors propose monthly plan payments of only $1,456.86, eCAST argues that the they are not devoting all projected disposable income to the Plan.

The Debtors

From the outset, the Debtors argue that *Kibbe v. Sumski* is inapplicable to the present case because there has been no change to the Debtors' income. In the Debtors' supplemental statement clarifying their response, the Debtors explain that Debtors' counsel inputs all pay advices from both Debtors for a period of six months into the "EZ-Filing" software. This includes all straight time, overtime, vacation, and sick pay, and takes into account the frequency of each pay advice. Debtors' counsel then inputs all payroll deductions for each pay period, including, but not limited to, tax deductions, 401(k) contributions, and health insurance payments. For Form 22C purposes, the software then calculates a monthly average income based upon the six months of information entered by Debtors' counsel. Here, this average was calculated to be $12,757.55.

In contrast, the Debtors explain that the software provides the user with two methods in which to calculate monthly gross income for Schedule I. The first option allows Debtors' counsel to calculate monthly gross income for Schedule I in an identical manner as it does for Form 22C, averaging a full six months of pay advices. Alternatively, the software will take the last pay advice for each Debtor from each job and extrapolate a monthly income figure based on the amounts and

9

frequency of those pay advices. This is the method Debtors' counsel used to reach monthly gross income of $14,762.35 on Schedule I.

With respect to the vehicle ownership expense deduction, the Debtors rely on *In re Fowler*[14] for the proposition that the Local Standards are a fixed allowances and not a cap on allowable expenses. They assert that a number of courts have held that a debtor may claim a vehicle ownership expense deduction on a vehicle owned outright.[15] The Debtors further argue that reliance on the IRM is inappropriate because the 11 U.S.C. § 707(b)(2)(A)(ii)(I) does not explicitly reference it.[16] Moreover, the Debtors assert that while they are not obligated under a note, they do incur operational expenses related to the use of the Cabrio.

The Trustee

The Trustee agrees with eCAST's assertion that the correct monthly gross income value to be used to calculate the Debtors' monthly disposable income on Form 22C is $14,762.35. The Trustee notes that the Debtors were questioned with respect to the income discrepancy between Schedule I and Form 22C at the meeting of creditors. The Trustee states that the Debtors testified under oath at the meeting of creditors that the income reflected in Schedule I was more representative of their current income and their income going forward. As such, pursuant to *Kibbe v. Sumski*, the Trustee contends that the income disclosed on Schedule I reflects the Debtors' reasonably anticipated income and should be used in calculating monthly disposable income on Form

---

[14] *In re Fowler*, 349 B.R. 414 (Bankr. D. Del. 2006).

[15] *See, e.g., In re Sawdy*, 362 B.R. 898 (Bankr. E.D. Wis. 2007) *vacated and remanded by Grossman v. Sawdy*, 384 B.R. 199 (E.D. Wis. 2008); *In re Davis*, 382 B.R. 764 (Bankr. W.D. Ark. 2008); *In re Wilson*, 356 B.R. 114 (Bankr. D. Del. 2006); *In re Haley*, 354 B.R. 340 (Bankr. D.N.H. 2006); *In re Demonica*, 345 B.R. 895 (Bankr. N.D. Ill. 2006).

[16] *In re Davis*, 382 B.R. at 768.

22C.

The Trustee also agrees with eCAST that the Debtor is not entitled to an ownership expense deduction for the Cabrio. Relying on *In re Ransom*, the Trustee concludes that statute can only be interpreted to apply in cases where debtors actually pay such an expense.[17] The Trustee further argues that the analysis of the Plan does not stop with the means test. She contends that Judge Feeney's decision *In re Phillips* recognized an exception to the objective test found in 11 U.S.C. § 1325(b)(3): "an above-median income debtor's plan that proposes to pay the debtor's disposable income employing the National and Local Standards in computing expenses in accordance with § 1325(b)(3) might still be objectionable in extraordinary circumstances under § 1325(a)(3) on the basis of a lack of good faith."[18]

While the Trustee generally agrees with eCAST's arguments, she disagrees with eCAST's monthly disposable income figure. She asserts that using the higher income figure disclosed on Schedule I also requires adjustments to the expense deductions on Form 22C as the payroll taxes and 401(k) contributions are correspondingly higher on Schedule I. Taking these adjustments into account, the Trustee contends that monthly disposable income calculation yields $2,246.60. As such, the Debtors have failed to devote all disposable income to the payment of unsecured creditors and therefore the Trustee asks that I sustain the Objection.

## IV. DISCUSSION

The Income Component

In *Kibbe v. Sumski*, the United States Bankruptcy Appellate Panel for the First Circuit

---

[17] *In re Ransom*, 380 B.R. 799, 807-808 (9th Cir. 2007).

[18] *In re Phillips*, 382 B.R. 153, 165 (Bankr. D. Mass. 2008).

11

recognized that the term "projected disposable income" is forward-looking, and concluded that it must be grounded in the debtor's anticipated income during the plan and not merely on an average of pre-petition income.[19] The Panel found that where a debtor's income at confirmation or as reasonably anticipated for the applicable commitment period is "materially different" from the debtor's disposable income as determined by 11 U.S.C. § 1325(b)(2), disposable income should then be determined by reference to Schedules I and J to avoid "anomalous results" occasioned by a change in the debtor's circumstances during the six months immediately prior to the petition date.[20]

In the present case, eCAST and the Trustee contend that the monthly gross income as stated on Form 22C does not adequately reflect the Debtors' reasonably anticipated income, and therefore monthly disposable income should be determined with reference to the income figure as stated on Schedule I. This argument, however, must fail for several reasons.

It is the burden of the party contesting the debtor's Form 22C disposable income figure to come forward with evidence in support of their claim that it does not accurately reflect the debtor's future ability to fund a plan.[21] Here, eCAST merely points to the disparity between the monthly gross income reported on Schedule I and Form 22C and demands that the Debtors prove which number is correct. This is insufficient to carry their burden. While a disparity between Schedule I and Form 22C may suggest a change in circumstances warranting a further investigation, it will not always, by itself, prove one. The reason is obvious: the figures are calculated differently. The monthly gross income figure on Form 22C is a historical value based on the six months preceding

---

[19] 361 B.R. at 312.

[20] *Id.* at 314-315.

[21] *In re Lanning*, 380 B.R. 17, 25 (B.A.P. 10th Cir. 2007).

the bankruptcy filing. In contrast, the income figure on Schedule I is an estimate of average monthly income at the time the case is filed. Particularly when dealing with debtors who receive an hourly wage or overtime pay, it is not surprising that there could be fluctuations in the debtors' income from month to month without a significant change in income or circumstances.

Additionally, blind reliance on the disparity between the figures disclosed on Form 22C and Schedule I misses the crux of the Debtors' argument. They assert that *Kibbe* is inapplicable because there has been no change in circumstances and that the discrepancy is a result of the Debtors' counsel's filing software. Neither eCAST nor the Trustee disputed this explanation at the hearing. Nor did they request an evidentiary hearing. In fact, eCAST's counsel represented that they would not be pursuing the income objection. As such, I will overrule it.

In her brief, the Trustee now alleges that the Debtors indicated at the meeting of creditors that Schedule I was more representative of their current monthly income than the figure stated on Form 22C. I note, however, that the Trustee did not file an objection to confirmation on this basis despite the meeting of creditors taking place nearly two months prior to the hearing on the Objection. I also note that the Trustee did not participate at the May 15, 2008 hearing.

Although I will overrule the Objection with respect to the income component of the disposable income calculation, that does not completely resolve the issue. As discussed above, the Debtors made a mathematical error on Schedule I that was subsequently carried to Schedule J and Form 22C. Correcting this error, the Debtors' monthly net income on Schedule J should be $1,187.33, rather than $1,456.86, and monthly disposable income on Form 22C should be $1,311.36, rather than $1,287.08. The Debtors, however, propose a monthly plan payment of $1,456.86, $269.53 more than Schedule I indicates they have each month. As none of these figures support a monthly plan payment of $1,456.86, I will order the Debtors to file an amended Form 22C and

13

Schedules I and J. If necessary, the Debtors shall also file an amended Chapter 13 plan consistent with these amended documents.[22]

In the interest of judicial economy, I will now address the phantom ownership expense deduction related to the vehicle owned outright, and thus eliminating the need to do so later.

The Expense Component

Section 1325(b) of the Bankruptcy Code, as amended by BAPCPA, provides in relevant part:

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan--
    (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
    (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
  (2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended--
    (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
     (ii) for charitable contributions . . . ; and
    (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.
  (3) Amounts reasonably necessary to be expended under paragraph (2), other than subparagraph (A)(ii) of paragraph (2), shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than--
    (A) in the case of a debtor in a household of 1 person, the median

---

[22] I am cognizant that this result essentially gives all three parties a "second bite at the apple" and likely guarantees a second round of objections to confirmation on the same basis. The parties would be well advised to check the math and be mindful of their respective burdens prior to filing pleadings.

14

family income of the applicable State for 1 earner;[23]

This section incorporates the means test found in 11 U.S.C. § 707(b)(2), which is used to determine whether a Chapter 7 case is presumptively abusive. The language relevant to the current analysis is as follows:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. . . .[24]

In *In re Young*,[25] an opinion issued while this matter was under advisement, I recently held that a debtor may claim a phantom ownership expense deduction on a vehicle owned outright. In that case, I recognized a vast divergence of opinion with respect to this issue and identified seven different rationales used to justify both positions. Ultimately, I reasoned as follows:

> I find the line of cases construing the Local Standards as fixed allowances to be persuasive. While I am loath to characterize 11 U.S.C. § 707(b)(2)(A)(ii)(I) as clear or unambiguous in light of the vast amount of conflicting authority, I am persuaded by the textual rationales discussed above that the most reasonable interpretation in light of the time honored rules of statutory construction is that "shall be" indicates that the Local Standards shall be the expense amounts entered on Form 22C without consideration of the Debtor's actual expenses. "Applicable" in this context simply means that debtors shall select the appropriate values from the Local Standards table, taking the debtor's locality into account. Construing "applicable" in the manner urged by eCAST would not properly acknowledge the distinction between that term and "actual" mandated by their appearance in the same sentence. I further note that reading the Local Standards as maximum allowable expenses would require me to read several more words into 11 U.S.C. § 707(b)(2)(A)(ii)(I) as it would need to reference a second number to form a limit.

---

[23] 11 U.S.C. § 1325(b)(1)-(3)(A).

[24] 11 U.S.C. § 707(b)(2)(A)(ii)(I).

[25] *In re Young*, No. 08-10012-WCH, 2008 WL 3274425 (Bankr. D. Mass. Aug. 8, 2008).

15

I reject the Reliance on IRS Materials Rationale as it is clear that the statute neither references or incorporates it. Moreover, this position is supported by the legislative history or BAPCPA. The fact that the final version of the statute does not explicitly incorporate the IRM when a prior draft did establishes that Congress knowingly and intentionally rejected use of the IRM in this context. Additionally, I agree with the Panel in [ *Hildebrand v. Kimbro (In re Kimbro)*, 389 B.R. 518 (B.A.P. 6th Cir. 2008)] finding that Congress created a bright-line means test in 11 U.S.C. § 707(b)(2)(A)(ii)(I) to which the discretionary nature of the IRM is incompatible.

Lastly, I note that "ownership expense" is not shorthand for a vehicle loan or lease payment. As the definition in *In re Kimbro* correctly observes, ownership expenses encompass a number of costs associate with owning a vehicle which do not include loan or lease payments. My one caveat is that I do not agree that every vehicle has ownership costs. While all *operating* vehicles incur some costs, a *non-operational* vehicle with no possibility of repair, due either to mechanical issues or the debtor's lack of will, does not. To be entitled to an ownership expense deduction, a debtor must first demonstrate that he does have *some* ownership costs.[26]

In the present case, the Debtors stated that they incur expenses in the operation of the Cabrio. eCAST did not dispute this assertion or request an evidentiary hearing. Instead, they relied the same arguments raised in the *Young* case. They are no more persuasive in this case. As such, the Debtors are entitled to a vehicle ownership expense deduction with respect to the Cabrio and the Objection is overruled.

## V. CONCLUSION

In light of the foregoing, I will enter an order overruling the Objection and ordering the Debtors to file an amended Form 22C and Schedules I and J.

*[signature]*

───────────────────────────────
William Hillman
United States Bankruptcy Judge

Dated: August 19, 2008

---

[26] *Id.* at *11 (see original text for identified terms).